405 So.2d 1061 (1981)
Clyde E. MEREDITH, Appellant,
v.
LOWE'S OF FLORIDA, INC., Heaton Construction, Inc., Keller Building Products of Orlando, Inc., L & M Builders Supplies, Inc., Scotty's Home Builders Supply, Inc. of Orlando, William David Kimmons, D/B/a Classic Plumbing, Bobby Swindle D/B/a West Orange Roofing, a & B Heat & Air, Inc., Jose Arreseigor, Sunniland Corp., Chase & Company, Security First Federal Savings and Loan Association, Mitchell Gordon, D/B/a Gordon Construction Co., Richard L. Ghent and Phil Osborn, Partners, D/B/a Mark '76 Homes, Appellees.
No. 80-1131.
District Court of Appeal of Florida, Fifth District.
November 18, 1981.
*1062 John H. Rhodes, Jr., of Rhodes & Hatcher, P.A., Orlando, for appellant.
Frederick W. Jones of Turnbull, Abner & Daniels, Winter Park, for appellee Security First Federal Sav. & Loan Ass'n.
J. Gary Walker of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Orlando, for appellee Keller Building Products of Orlando, Inc.
John R. Gierach of Edward & Ewald, P.A., Orlando, for appellee Heaton Construction, Inc.
No appearance for appellees Lowe's, L&M, Scotty's, William Kimmons, Bobby Swindle, A&B Heat & Air, Jose Arreseigor, Chase & Co., Mitchell Gordon, Richard L. Ghent, Phil Osborn and Sunniland Corp.
FRANK D. UPCHURCH, Jr., Judge.
Appellant Clyde E. Meredith contracted with Mitchell Gordon, a general contractor, to build his home. Gordon abandoned construction leaving several sub-contractors unpaid. Appellant sought suit for declaratory relief to determine how much, if anything, the various sub-contractors were entitled to receive from undisbursed construction funds. The court entered judgment in favor of several of the lienors. Appellant appeals contending that the court failed to adjust the contract price by his reasonable costs of completion.
The parties stipulated that the pre-abandonment contract price was $39,629.50 and that there had been proper payments under section 713.06, Florida Statutes (1979), in the sum of $20,570.15. The difference remaining was $19,059.35. Appellant contends that section 713.06 limits liability of an owner and his land under the Mechanic's Lien Law to the contract price and that the reasonable cost of completing the construction contract must be deducted from the contract price.
Section 713.06(1) provides in relevant part:

The total amount of all liens allowed under part I [Mechanic's Lien Law] for furnishing labor, services, or material covered by any certain direct contract shall not exceed the amount of the contract price fixed by the direct contract except as provided in subsection (3). (emphasis added)[1]
In Alton Tower, Inc. v. Coplan Pipe & Supply Co., 262 So.2d 671 (Fla. 1972), the Florida Supreme Court declared that under our mechanics' lien law, where a contractor on the general contract defaults prior to completion of work, the owner's reasonable cost of completing the contract diminishes the balance of the contract price. Id. at 672.
Appellant introduced evidence establishing his cost of completion at $19,900 to $22,288.80 and therefore nothing remained for distribution because the difference between the pre-abandonment contract price and proper payment was $19,059.35 and the cost of completion $19,900, at the least.
The limited liability section of 713.06(1), however, applies "except as provided in subsection (3)." Here, the trial court determined *1063 that section 713.06(3)(h) was applicable and therefore the limited liability protection was unavailable. Section 713.06(3)(h) provides:
When the owner has properly retained all sums required in this section to be retained but has otherwise made improper payments, the owner's real property shall be liable to all ... subcontractors... and materialmen complying with this chapter only to the extent of the retentions and improper payments, notwithstanding the other provisions of this subsection... . (emphasis added)
The parties stipulated that appellant had made improper payments of $3,420. Appellees contend that under Tamarac Village, Inc. v. Bates & Daly Co., 348 So.2d 23 (Fla. 4th DCA 1977), once improper payments are made, then the reasonable cost of completion cannot be considered.
In Tamarac, the court stated:
If an owner fulfills all the duties the Mechanics' Lien Law places upon him, his liability for all mechanics' lien claims cannot exceed the contract price... . However, if the owner makes improper payments, then he has failed to comply with the Mechanics' Lien Law, and his liability for mechanics' lien claims may exceed the contract price.
348 So.2d at 25.
The court held that because improper payments were made, "Tamarac could not deduct the pre-notice of commencement payments... nor the reasonable cost of completion from the adjusted contract price." Id.
A close reading of the Tamarac opinion does not support appellees' theory. In Tamarac the reasonable costs of completion were themselves improper payments because Tamarac had failed to file a notice of recommencement.
Brea v. MPS Industries, Inc., 372 So.2d 212 (Fla.3d DCA 1979), however, does support appellees' position. There the Third District Court of Appeal held that in an action to foreclose a mechanic's lien, the landowner could not defend on the ground that the original contract price was exceeded by the amount of proper payments made and the reasonable cost of completion, where improper payments are made. The court cited Tamarac as authority for its holding though failed to note that there the reasonable costs of completion were themselves improper payments.
In the case before us, the contract price was $39,629.50. Payments made, both proper and improper, totaled $23,990.15, leaving a balance of $15,639.35 owed on the contract. As to the lienors, though, $3,420 was improperly paid so the balance remaining for completion of the work and payment of the lienors was $19,059.35. However, the reasonable cost to complete was $19,900 making the total cost to the owner $43,890.15. These calculations reflect that the owner had been penalized 100% of the improper payments.[2]
We reject the holding implicit in Brea that once a landowner makes improper payments, the reasonable costs of completion cannot be considered. Rather, we hold that the liability of the owner and his lands is limited to the contract price remaining after deducting therefrom payments properly made. Alton Towers. Payments reasonably necessary to complete the work, if made as required under chapter 713, Florida Statutes, are proper payments.
We REVERSE and REMAND for entry of judgment for appellant.
COBB and COWART, JJ., concur.
NOTES
[1] "Contract price" is defined in section 713.01(3), Florida Statutes (1979), as meaning:

The amount agreed upon by the contracting parties for performing all labor and services and furnishings all materials covered by their contract and shall be increased or diminished by the price of extras or change orders as herein defined, or by any amounts attributable to changes in the scope of the work or defects in workmanship or materials or any other breaches of the contract... .
[2] If appellees' position were correct, this extreme example could result. A contractor on a $30,000 construction job abandons construction and the perfected liens total $10,000. Proper payments of $10,000 have been made, but it will take $20,000 to complete the work. Owner has made $1,000 in improper payments. If the improper payments would prevent consideration of the cost to complete, the lienors would be paid in full and the owner would be left with nothing to complete the work, a high price to extract for paying $1,000 incorrectly for had the owner not paid it, he would get his building completed and the lienors would get nothing.