In re G & R BUILDERS, INC., Debtor.

Charles L. WEISSING,
Trustee Plaintiff,

v.

Hal GERRING, et al., Defendants.

Bankruptcy No. 89–0049–8P7.
Adv. No. 90–018.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 21, 1990.

Charles L. Weissing, Tampa, Fla., trustee.

Thomas F. Capshew, Sarasota, Fla., for Hal and Winona Gerring.

Mark J. Wolfson, Tampa, Fla., for Superior Heating–Cooling Corp., Doors of the South, Inc., Hoops Elec. Corp.

Joel Treuhaft, Tampa, Fla., for Florida Mining & Materials Corp., Intra–State Terrazo & Cement Co., Inc., Eugene R. Gilworth, Englewood Fireplace Shoppe, Inc., Blu Aqua Pools, Inc.

Andrew Shaw, Sarasota, Fla., for Stottlemeyer & Shoemaker Lumber Co.

William R. Pomeroy, Fort Lauderdale, Fla., for J.G. Plumbing Service, Inc.

Michael S. Drews, Sarasota, Fla., for American Residential Elevators, Inc.

Allen J. Levin, Port Charlotte, Fla., for Scotty's, Inc.

Randall W. Lord, Tampa, Fla., for Russell and Callie Mitchell.

Robert W. Clark, Tampa, Fla., for First Florida Bank.

Robert E. Messick, Sarasota, Fla., for Charles and Mrs. Charles Winkler.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case, and the matters under consideration are two Motions for Summary Judgment. One is filed by Charles L. Weissing, Trustee (Trustee), the Plaintiff, and the other by American Residential Elevators, Inc. (American Residential), one of the named Defendants in the above-captioned adversary proceeding. The Trustee in his Complaint, which consists of eight counts, sets forth following claims.

In Count I, the Trustee seeks a "turnover" [sic], i.e., to recover the sum of $31,710.23 from two of the named Defendants, Harold Gerring and Winona Gerring (Gerrings). In Count II, the Trustee seeks a determination of the extent and validity of liens of several of the Defendants named in the adversary proceeding, all of which were subcontractors or suppliers of materials in a certain construction project in which G & R Builders, Inc. (Debtor), was the general contractor and the Gerrings were the own-

ers. In Count III, the Trustee seeks again a turnover of $2,359.78 from Community National Bank (Bank) and from Russell Mitchell and Callie Mitchell (Mitchells), also named as Defendants in the adversary proceeding. In Count IV, the Trustee seeks again a turnover of the sum of $187.52 from First Florida Bank (First Florida) and again, the Mitchells.

In Count V, the Trustee seeks a turnover of the sum of $4,475.48 from the First National Bank of Venice (Bank of Venice) and the Mitchells and from American Lumber & Home Center, Inc. (American Lumber), who is also a named Defendant in the adversary proceeding. In Count VI, the Trustee seeks to recover by way of turnover the sum of $19,525.40 from Mr. and Mrs. Charles Winkler (Winklers), also named as Defendants in this adversary proceeding. The claim in Count VII is based on 11 U.S.C. § 547 of the Bankruptcy Code and seeks to invalidate as preferences certain liens obtained by garnishment by the Defendants, the Mitchells. In Count VIII, the claim is again based on § 547 and seeks to invalidate the garnishment lien obtained by American Lumber. Most of the Defendants filed crossclaims asserting that they have the superior right to the funds the Trustee seeks to recover.

Unfortunately, the Trustee lumped several different claims in one single Complaint and while there may be common questions of fact and law toward the Defendants concerning Count II which seeks a determination of the validity and extent of the liens and claims of the named Defendants, several other actions which deal with preferences are certainly not properly part of this lawsuit. Since no one has filed a Motion To Sever these claims, this Court will consider them together.

The Trustee's Motion seeks a Summary Judgment on his claim set forth in Count II, the Count involving American Residential, and seeks a determination that the funds are presently due and owing to the Debtor and therefore are properties of the estate by virtue of § 541(a)(1) of the Bankruptcy Code and that his right to the funds in question is superior to any claim of

American Residential and the other materialmen and subcontractors named as Defendants based on the undisputed facts as appear from this record. In addition, the Trustee contends that neither American nor the other subcontractors filed claims of lien or otherwise perfected their lien rights against the property owned by the Gerrings. Therefore, their claims to the funds are inferior to the rights of the Trustee, and the subcontractors have nothing but an unsecured claim against the Debtor and have no right to the funds in the registry of the Court.

In opposition, American Residential asserts in its Motion for Summary Judgment first that the funds withheld are not property of the estate; second, American Residential claims that even if the funds are property of the estate, they are only property of the estate to the extent of the Debtor's bare legal title to the funds as they constitute an express trust. In the alternative, American Residential claims that even if the funds involved are properties of the estate, they are impressed with an equitable lien which is a valid encumbrance of the Trustee's right to the funds.

It is the contention of both parties that the facts are indeed without dispute, but, of course, the parties disagree as to who is entitled to a favorable judgment as a matter of law. Thus, in spite of the confused procedural state of this adversary proceeding, it is clear that the ultimate question is whether or not certain funds withheld by the owners of the property which was involved in the construction project with the Gerrings in which the Debtor was a general contractor, are properties of the estate. There is no question that if the funds involved in this controversy are not property of the estate at all, the Defendants are entitled to proceed in an appropriate non-bankruptcy forum to assert whatever rights they have against the funds in question, assuming this Court lifts the automatic stay to permit them to do so. The next question is whether or not those funds are impressed with a valid, enforceable interest claimed by American Residential based on the theory of an express or resulting trust. If that is the case, the Trustee has only a

bare legal title to the funds, and pursuant to 11 U.S.C. § 541(d), the funds will be property of the estate only to the extent of the Trustee's bare legal title. In the alternative, if the funds are property of the estate, the question remains whether the funds are impressed with an equitable lien, and if so, whether the equitable lien would survive the Trustee's avoidance powers pursuant to 11 U.S.C. § 544.

The facts which are relevant and are indeed without dispute are as follows:

On June 16, 1987, G & R Builders, Inc., the Debtor (Debtor), and the Gerrings entered into a construction contract wherein the Debtor agreed to be a general contractor for the improvement of a certain parcel of real property owned by the Gerrings, which is located in Nokomis, Florida. On February 14, 1988, a Notice of Commencement regarding the construction contract was recorded in the Public Records of Sarasota County, Florida. Thereafter, the Debtor commenced construction.

On November 2, 1988, Garry Battaglia, president of the Debtor, executed a Final Contractor's Affidavit pursuant to *Fla. Stat.* § 713.06(3)(d), stating that the Affidavit was executed "for the purpose of obtaining a final payment from Mr. and Mrs. Harold Gerring in the amount of $20,-000.00, plus change orders, as of November 2, 1988, in the amount of $11,710.23." Paragraph 4 of the Affidavit stated that all work to be performed under the contract had been fully completed and that all lienors under the direct contract had been paid in full, except for twelve subcontractors and materialmen, eleven of which are named Defendants in this adversary proceeding. The Affidavit itemized the amounts remaining unpaid, which totalled $33,523.39. Upon receipt of the Affidavit, Hal Gerring kept the sum of $31,710.23 in his checking account at First Florida Bank, Venice, Florida, for the benefit of unpaid subcontractors and suppliers, and withheld this amount from the Debtor.

On January 5, 1989, the Debtor filed its voluntary Petition initiating this case. Subsequent to the commencement of this adversary proceeding, the Gerrings deposited the sum of $31,710.23 into the Registry of this Court and were subsequently dismissed as Defendants in this adversary proceeding.

Based on the foregoing, the threshold question is whether the funds originally deposited in Hal Gerring's checking account are property of the estate. 11 U.S.C. § 541(a)(1) defines property of the estate broadly to include all legal or equitable interests of the debtor in property as of the commencement of the case. Thus, if the Debtor had a legal or equitable interest in the holdback as of the commencement of the case, the holdback is property of the estate.

■ American Residential argues first that the Debtor has no interest in the funds and, thus, the funds are not property of the estate, based on *Fla.Stat.* § 713.06(3)(d)(2), which provides that an owner may pay subcontractors directly under certain circumstances and thereby deduct those payments from the total amount owing to the general contractor. This Statute provides in pertinent part as follows:

2. If the contractor's affidavit required in this subsection recites any outstanding bills for labor, services, or materials, the owner may, after giving the contractor at least 10 days' written notice, pay such bills in full direct to the person or firm to which they are due, if the balance due on a direct contract at the time the affidavit is given is sufficient to pay them and lienors giving notice, and shall deduct the amounts so paid from the balance due the contractor. Lienors listed in said affidavit not giving notice, whose 45–day notice time has not expired, shall be paid in full or pro rata, as appropriate, from any balance then remaining due the contractor; but no lienor whose notice time has expired shall be paid by the owner or by any other person except the person with whom that lienor has a contract.

Thus, under Florida law, an owner may withhold and deduct from the ultimate amount due under a construction contract certain amounts if the contractor's affidavit recites any outstanding bills for labor, services or materials and if the owner pro-

vides the contractor with ten days' notice. *Fla.Stat.* § 713.06(3)(d)(2); *see also, St. Petersburg Sheraton Corp. v. Transcoastal Maintenance & Supply Co., Inc.,* 377 So.2d 995, 996 (Fla. 2d DCA 1979); *Meredith v. Lowe's of Florida, Inc.,* 405 So.2d 1061 (Fla. 5th DCA 1981).

This record is devoid of any evidence that the Gerrings ever gave the notice to the Debtor required by *Fla.Stat.* § 713.06(3)(d)(2) of their intent to hold back funds for payment of subcontractors. Therefore, the Gerrings were not entitled to deduct the funds from amounts owing to the Debtor. For this reason, the Court is satisfied that the funds are due and owing to the Debtor and thus, represent a chose of action of the Debtor which is property of the estate. Therefore, this Court is satisfied that the Debtor has an interest in the funds and thus they are property of the estate.

To avoid this conclusion, American Residential relies heavily on the case of *Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), a case in which the United States Supreme Court considered the question whether a debtor/contractor or its surety was entitled to funds withheld by the owner of property who had entered into a construction contract with the debtor pre-petition. In *Pearlman,* a contractor terminated its contract by agreement with the owner. Thereafter, the contractor filed for bankruptcy. Pursuant to the contract, the owner was authorized to retain and hold a percentage of the progress payments. Subsequent to the contractor's bankruptcy filing, another contractor completed the job. The owner did not pay to the subcontractors the funds withheld, and the original contractor's surety was forced to step in and meet these obligations. The debtor's trustee contended that the funds withheld were property of the debtor's estate.

The Supreme Court in *Pearlman* ruled that the holdback belonged to the surety and did not belong to the debtor. Since the contractor's surety stepped in and met the obligations of the contractor, the surety was subrogated to the subcontractor's rights against the owner. In so holding, the Supreme Court held that "the [owner] had a right to use the retained fund to pay laborers and materialmen ... and had [the contractor] completed his job and paid his laborers and materialmen, [he] would have become entitled to the fund...." 371 U.S. at 141, 83 S.Ct. at 241, 9 L.Ed.2d at 196.

The difference between the case at hand and Pearlman is evident when one considers that *Pearlman* was decided based on principles of subrogation and the rights of sureties. The holding in *Pearlman* does not convince this Court that the funds are not property of the estate, especially in light of the Gerrings' failure to comply with *Fla.Stat.* § 713.06(3)(d)(2).

Nonetheless, American Residential contends that the estate has only bare legal title to the funds and thus, 11 U.S.C. § 541(d) comes into play which provides:

§ 541. **Property of the estate**
(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

By virtue of § 541(d), American Residential claims that the funds constitute an express or resulting trust created to assure payment to the subcontractors and materialmen, thus American Residential and the other subcontractors are entitled to the funds as they hold equitable title. It is well established that to create a trust, there must be sufficient words to evince an intent to create a trust, a definite subject matter, and a certain and ascertained object, or named beneficiary. *In re Estate of Craft,* 320 So.2d 874 (Fla. 4th DCA 1975); *see also Bay Biscayne Co. v. Baile,* 73 Fla. 1120, 75 So. 860 (1917). A "resulting trust" requires the same three elements. *Grapes v. Mitchell,* 159 So.2d 465 (Fla. 1963).

■ Applying the above to the facts as appear from this record, this Court is satisfied that Hal Gerring had the requisite

intent to create an express trust. However, by Mr. Gerring's own admission in his affidavit, there is not a definite identifiable res. The affidavit states that Hal Gerring retained the holdover amount in his personal checking account as opposed to a segregated or earmarked account identified as trust property. These funds were commingled with those of Hal Gerring and Hal Gerring had no restrictions on his right to use the funds. These funds were clearly reachable by creditors, as evidenced by the fact that the Mitchells have served the Gerrings with a writ of garnishment directing the Gerrings to pay the funds in question to the Mitchells. As a result, this Court is satisfied that the funds deposited in Hal Gerring's checking account are not trust property and thus are not immunized from the claims of the Trustee by virtue of 11 U.S.C. § 541(d).

■ This leaves for consideration whether an equitable lien should be imposed on the funds in favor of American Residential. The doctrine of equitable liens remedies those situations where the general considerations of right and justice dictate that one party has a special right to particular property and where there is an absence of an available lien or no adequate remedy at law. *See Crane Co. v. Fine,* 221 So.2d 145 (Fla.1969); *In re Estate of Donner,* 364 So.2d 742 (Fla. 3d DCA 1978). It is without dispute that one who has performed services or furnished materials in the improvement of real property is not limited to a proceeding under Mechanic's Lien Law, but may proceed to establish an equitable lien on the property in question, whether that property is real estate or a holdback fund. *Crane Co. v. Fine, supra,* 221 So.2d at 145.

■ This Court has no problem concluding that ordinarily, an equitable lien may be imposed on holdback funds in favor of the unpaid subcontractors and materialmen. In fact, this Court had occasion to consider a similar question in the case of *In re Bob Cooper, Inc.,* 65 B.R. 609 (Bankr.M.D.Fla.1986). In *Bob Cooper,* this Court imposed an equitable lien against funds held back by the owner for work performed by an unpaid materialman based on a "general consideration of right and justice as applied to the relations of the parties and the circumstances of the dealings in a particular case." *Id.,* at 612, *citing, Jones v. Carpenter,* 90 Fla. 407, 106 So. 127 (Fla. 1925). This Court noted that the materialman was not required to seek relief only under the Mechanic's Lien Law, but because of general considerations of equity, this Court found the materialman had a cognizable, equitable lien against the funds held back.

Nevertheless, this Court went on to find that the equitable lien was unenforceable in bankruptcy, due to the provisions of 11 U.S.C. § 544, which provide the Trustee with the avoiding powers of a hypothetical lien creditor. Section 544, commonly referred to as the "strong arm clause", provides in pertinent part as follows:

**§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers**

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the

time of the commencement of the case, whether or not such a purchaser exists. Under § 544, the Trustee is charged only with such notice as appeared on the public record as of the commencement of the case, and is not charged with the debtor's actual knowledge of the circumstances.

As noted by this Court previously in *Bob Cooper*, equitable liens have found a hostile environment in bankruptcy cases. The Act of 1898 expressly dealt with this subject and provided in § 60(a)(6), that "[t]he recognition of equitable liens where available means of perfecting legal liens have not been employed is hereby declared to be contrary to the policy of this section." This provision was consistent with one of the overall policies of the Bankruptcy Act, that is, to place the trustee in the position of an ideal nonexisting judgment lien creditor whether or not such creditor, in fact, existed.

While it is true that the Bankruptcy Code has no corresponding provision of § 60(a)(6) of the Bankruptcy Act, nevertheless this Court is satisfied that the special voiding powers accorded to the Trustee under § 544 of the Bankruptcy Code, the "strong arm" clause, impliedly includes the power of the Trustee to defeat unperfected liens such as the one in this instance, a claim to the funds as to which American Residential never acquired or perfected a lien.

At the time of the commencement of this case, there was no perfected lien on record in favor of American Residential or the other subcontractors and materialmen. Further, there was nothing that prevented American Residential and the other materialmen and subcontractors from filing and perfecting a claim of lien on the property, obtaining a perfected security interest from the Debtor on its accounts and contract receivables, or requiring the Debtor to post a performance and payment bond. Thus, even assuming without admitting that American Residential is entitled to an equitable lien on the funds in question, such a lien would not survive in bankruptcy. As noted, § 544 places the Trustee in the shoes of a hypothetical lien creditor, who, of course, could defeat all liens and encumbrances not of record; thus, any equitable lien American Residential may have on the funds is subordinate to the Trustee's interest in the same pursuant to § 544.

Having concluded that the funds are property of the estate, are not within the exception to the scope of property of the estate pursuant to § 541(d), are not impressed with an equitable lien which would survive the Trustee's avoidance powers, this Court is satisfied that American Residential's Motion for Summary Judgment must be denied and the Trustee's Motion for Summary Judgment as to Count II as it relates to the materialmen and subcontractors should be granted.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by American Residential be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that the Trustee's Motion for Summary Judgment be, and the same is hereby, granted in part as to the materialmen and subcontractors, and denied in part as to the remainder of the Defendants in Count II. A separate partial Final Judgment shall be entered in favor of the Trustee and against the materialmen and subcontractors named as Defendants in Count II of the Complaint. It is further

ORDERED, ADJUDGED AND DECREED that a continued Pretrial Conference shall be scheduled in this matter on January 10, 1991, at 3:00 p.m. regarding the remainder of the Complaint.

DONE AND ORDERED.