**IN RE: CLIMATE CONTROL MECHANICAL SERVICES, INC., Debtor.**

**Carrier Enterprise, LLC, Plaintiff,**

**v.**

**City of Dunedin, Defendant.**

**City of Dunedin, Third–Party Plaintiff,**

**v.**

**Carrier Enterprise, LLC, Climate Control Mechanical Services, Inc., Nelson & Company, LLC, and Community Bank & Trust of Florida, Third–Party Defendants,**

Case No.: 3:15–bk–2248–JAF
Adv. Pro. No.: 3:16–ap–0023–JAF

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Signed July 24, 2017

---

674

Scott S. Sheffler, Worman & Sheffler, P.A., Winter Park, FL, for Plaintiff.

Thomas J. Trask, Trask Daigneault, LLP, Clearwater, FL, for Defendant.

Richard A. Perry, Richard A Perry, Attorney at Law, Thomas W. Cartwright, Law Office of Thomas W. Cartwright, Ocala, FL, Adina L. Pollan, Pollan Legalfor, Jacksonville, FL, for Third–Party Defendants.

## ORDER GRANTING DEBTOR'S AMENDED MOTION FOR SUMMARY JUDGMENT

Jerry A. Funk, United States
Bankruptcy Judge

This proceeding is before the Court on: Debtor CLIMATE CONTROL MECHANICAL SERVICES, INC.'S Amended Motion for Summary Judgment (Debtor's "Motion") (Doc. 38); Plaintiff CARRIER ENTERPRISE, LLC'S Memorandum in Opposition to Debtor's Motion (Doc. 43); and NELSON & COMPANY, LLC'S Response in Opposition to Debtor's Motion (Doc. 42). For the reasons stated herein, the Motion is granted.

### Jurisdiction

This is a proceeding to determine whether certain funds are property of the estate, as well as the existence and extent of any perfected security interests in and/or equitable liens upon such funds. This proceeding is a core matter that arises in a Title 11 case. The claims of both Plaintiff Carrier Enterprise, LLC ("Carrier") and Debtor are claims that would necessarily be resolved in the process of ruling on the parties' proofs of claim. Further, this is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A), (K), and/or (O). The Court, therefore, has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and the standing order of reference. The parties raise concerns over diversity jurisdiction; however, because this is a core proceeding, the Court is not exercising diversity jurisdiction. See In re Bracewell, 454 F.3d 1234, 1246 (11th Cir. 2006) ("whether a debtor's interest constitutes property of the estate is a federal question.").

### Background

Climate Control Mechanical Services, Inc. ("Debtor") filed a voluntary petition under Chapter 11 on May 18, 2015. (Doc. 1 in 3:15–bk–2248). Debtor is a commercial heating, ventilation, and air conditioning ("HVAC") contractor. On January 27, 2016, Carrier filed the instant adversary proceeding, seeking declaratory relief and an equitable lien on certain funds held by the City of Dunedin (the "City"). (Doc. 1). Debtor was brought into this proceeding via the City's third-party complaint, impleading[1] the other necessary parties. (Doc. 20).

The operative pleading is Debtor's crossclaim, which seeks a determination that the certain funds retained by the City are property of the estate and subject to a perfected security interest held by Community Bank & Trust of Florida ("Community Bank"). (Doc. 23 at 3–4). In the main case, Community Bank filed a proof of claim asserting a secured claim of roughly $1.8 million dollars stemming from working capital loans and lines of credit. (Claim 39). This proof of claim states, "[Debtor] provided Community Bank with a first priority security interest in all accounts re-

---

1. The City uses both impleader and interpleader nomenclature. Regardless, the Court is convinced all necessary parties are before the Court and have submitted to its personal jurisdiction.

ceivable of Climate Control." (Claim 39–1 at 5). "Community Bank perfected its security interest in [Debtor's] Accounts by, among other things, filing a UCC–1 Financing Statement dated February 21, 2008." (Claim 39–1 at 5).

Prior to the Petition Date, the City contracted with Debtor for the replacement of various HVAC systems on City property (the "Prime Contract"). (Doc. 20–1) (invitation to bid and bid proposal); (Doc. 20–2) (City's purchase order). It is undisputed that Debtor completed all work under the Prime Contract prior to the Petition Date. (Doc. 20 at 3, ¶ 13). Debtor subcontracted with Carrier and Nelson & Company LLC ("Nelson") to complete the Prime Contract.

In November 2014, the City paid Debtor $98,930.42 for services rendered. (Doc. 20–3). However, the City currently retains $77,611.59 (the "Withheld Funds") owed to Debtor under the Prime Contract. The City has withheld these funds because it "does not and cannot know" which entities have a "legitimate interest" in the Withheld Funds. (Doc. 20 at 4).

Carrier alleges that $42,657.96 of the Withheld Funds were "specifically earmarked" to pay Carrier for the material furnished to Debtor. (Doc. 1 ¶ 19). In answering this allegation, the City pled: "the monies held by the City are earmarked for the services [Debtor] provided to the City" and specifically denied the Withheld Funds were earmarked for Carrier. (Doc. 5 ¶ 19). The only parties to the Prime Contract were the City and Debtor, and no provision in the Prime Contract calling for direct payment by the City to a third party was presented to the Court.

Carrier attested it had inquired with the City's purchasing agent in an effort to receive payment from the Withheld Funds. (Doc. 7). The City's purchasing manager communicated the following: "Climate Control has finished the work under the contract for the City of Dunedin. They have submitted their final payment requests. We are discussing how we want to proceed." (Doc. 7 ¶ 7). Debtor argues the Withheld Funds are due to it pursuant to the Prime Contract and that there is no agreement earmarking any funds for third parties. (Doc. 38). Carrier and Nelson argue the funds were specifically earmarked for them by the City and, therefore, their respective portions are their own property rather than Debtor's or the estate's property. (Docs. 42 and 43).

### Standard for Summary Judgment

The chief question at summary judgment is whether there is sufficient evidence to warrant a trial. That is, summary judgment is appropriate if the pleadings and discovery show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Fed. R. Bankr.P. 7056. The court must view the evidence in a light most favorable to the non-movant. In re Delco Oil, Inc., 599 F.3d 1255, 1257 (11th Cir. 2010). The movant bears the initial burden of demonstrating the absence of a triable issue. Id. Once the movant meets the initial burden, the burden shifts to the non-movant to come forward with evidence, beyond its pleadings, showing a genuine fact-question exists. Id.

### Analysis

A. *Whether the Withheld Funds are property of the estate.*

Section 541 of the Bankruptcy Code provides that the filing of a bankruptcy petition creates an estate comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (2015). "Section 541 is construed broadly, so as to effectuate Congressional intent that a wide range of

property be included in the estate." In re Evaluation Sols., LLC, 2013 WL 3306216, at *3 (Bankr. M.D. Fla. June 27, 2013) (quoting In re Holywell Corp., 913 F.2d 873, 881 (11th Cir. 1990)). Whether a debtor's interest in property is property of the estate is a federal question, but courts must look to state law to decide whether the debtor had a legal or equitable interest in the property when it filed for bankruptcy. Id. (citing In re Bracewell, 454 F.3d 1234, 1243 (11th Cir. 2006)). In Florida, "[a] debtor's interest in its pre-petition contracts becomes property of the debtor's estate upon the filing of a bankruptcy petition." Id. "Simply put, the bankruptcy estate inherits all of the rights and obligations of the debtor under contracts as of the commencement of the bankruptcy case." Id.; In re G & R Builders, Inc., 123 B.R. 654, 657 (Bankr. M.D. Fla. 1990) ("Thus, if the Debtor had a legal or equitable interest in the holdback as of the commencement of the case, the holdback is property of the estate."); In re Atkinson, 258 B.R. 769, 772 (Bankr. D. Idaho 2001) ("[T]he portion of the Debtors' accounts receivable generated pre-petition became property of their estate upon filing . . . .").

In Winsco, a case relied on by Carrier, a debtor-subcontractor contracted with a materialman to provide construction material. In re Winsco Builders, Inc., 156 B.R. 98 (Bankr. M.D. Fla. 1993) (Paskay, C.J.). The property owner wrote a check jointly payable to both the debtor-subcontractor and the materialman. The check was jointly endorsed, then deposited in the debtor's account, and finally the debtor issued another check to the materialman for its portion. The question was whether the transfer from the debtor to the materialman was an avoidable preference. The Winsco court held the funds were earmarked for the materialman because "the payee control[ed] the application of the funds by requiring dual endorsement be-

fore the check can be negotiated." Id. at 100. The court then concluded the earmarked funds were never property of the estate and, therefore, were not an avoidable preference. Id. at 101. As applied here, Winsco supports Debtor's argument because the key takeaway is that, in order for an earmarking theory to apply, there must be some evidence demonstrating the project-owner/payor intended for the funds to go to a specific entity. The absence of such intent indicates there was no earmarking.

The chief opinion relied on by Nelson is the Supreme Court's Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). This opinion dealt with a surety's claim to withheld funds where the surety had paid subcontractors and materialmen pursuant to a construction payment bond, following the debtor-contractor's failure to pay the subcontractors/materialmen. Pearlman held that surety's subrogation rights superseded the rights of the trustee to the monies owed by the project owner to the debtor-contractor. Pearlman, 371 U.S. at 141, 83 S.Ct. 232. Even though the retainage was property of the debtor-contractor, the surety was subrogated to the debtor's rights to those funds.

Judge Thorne, in In re Glenbrook Group, Inc., 552 B.R. 735 (Bankr. N.D. Ill. 2016), explains why Pearlman no longer retains precedential value as applied here. The 1978 enactment of the Bankruptcy Code "expanded the definition of property of the estate." Glenbrook Group, 552 B.R. at 740. "[T]he very things the Court states are not property of the estate in Pearlman, property subject to **equitable** interests, mortgages, **liens**, etc., are now included as property of the estate under § 541(d), albeit subject to any equitable interest [e.g., an equitable lien]." Id. (brackets and bolding added). Put differently, even if Carrier

and Nelson prevail on their claim of an equitable lien, such a lien does not remove the Withheld Funds from the estate.

In re Nemko sheds some light on the present case. In re Nemko, Inc., 143 B.R. 980 (Bankr. E.D.N.Y. 1992). In Nemko, two subcontractors "assert[ed] that language in the [prime contract] requires [the project owner] to withhold the sums due them from its payments to the Debtor[-general contractor]." Id. at 984. The two subcontractors "base[d] their argument that the monies owed are not property of the estate on the Supreme Court decision in Pearlman." Id. at 986. The Nemko court reasoned that the "Supreme Court decided the Pearlman case pursuant to the old Bankruptcy Act which defined the property passing to the bankrupt's trustee in a more limited fashion than the Bankruptcy Code currently defines the property of the debtor's estate." Id. Nemko then concluded that, "[u]nder the broad definition of property in Section 541(a) of the Bankruptcy Code, the Debtor's interest in the account receivable is property of the estate." [2] Id.

The Court recognizes that courts have continued to find precedential value in Pearlman. But those cases involve claims of subrogation and not claims of equitable liens. See, e.g., In re Cone Constructors, Inc., 265 B.R. 302, 308 (Bankr. M.D. Fla. 2001) (Glenn, J.), ("In other words, since the debtor/contractor had defaulted and the surety had stepped into the shoes of the debtor prior to the filing of the bankruptcy case by performing under the bond, 'whatever rights the debtor had in the contract passed to the surety by virtue of the doctrine of subrogation, prior to bankruptcy.' "); In re QC Piping Installations, Inc., 225 B.R. 553, 569 (Bankr. E.D.N.Y. 1998), ("When at the time of the filing of the bankruptcy petition the work is complete but the debtor has defaulted in paying its labor and material obligations and the surety has paid them, the estate has no property interest under § 541 in the contract proceeds.").

A suretyship is a three-way relationship that gives rights of subrogation to the surety. "When, on default of the contractor, [the surety] pays all the bills of the job to date and completes the job, it stands in the shoes of the contractor insofar as there are receivables due it; in the shoes of laborers and material men who have been paid by the surety—who may have had liens; and, not least, in the shoes of the government, for whom the job was completed." Transamerica Ins. Co. v. Barnett Bank, 540 So.2d 113, 115–16 (Fla. 1989) (holding that a surety's subrogation right is not a security interest yet supersedes a security interest of a contract assignee, such as a bank with an interest in a debtor's accounts receivable); Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co., 320 F.3d 1260, 1270 (11th Cir. 2003) (applying Transamerica Ins. Co.); 7 *Fla. Jur 2d Bonds* § 22 (subrogation of surety); 8 *Fla. Constr. Law Manual* § 10:5 (2016–2017 ed.) (rights of surety). Pearlman has precedential value as applied to a surety's equitable *subrogation* claim to retainage, but has no precedential value as applied to a subcontractor's claim of equitable *lien* on retainage.

In sum, there is no evidence contradicting the following facts: a) the Prime Contract was completed before the Petition Date, b) the full monies owed to Debtor under the Prime Contract became due prior to the Petition Date, and c) the City did not specifically allocate or "earmark" any portion of the Withheld Funds to any per-

---

**2.** It should be noted that the accounts receivable in Nemko were also subject to a perfected security interest of a bank, just as is claimed in the instant case.

son/entity other than Debtor. Paragraph 19 of the City's answer states the Withheld Funds were earmarked for Debtor and denies the funds were earmarked for Carrier. (Doc. 5 at 3, ¶ 19). In the absence of any evidence showing intent by the City to allocate funds to Nelson or Carrier, the only conclusion is that the funds are property of the estate. G & R Builders, 123 B.R. at 657; Atkinson, 258 B.R. at 772.[3]

### B. Whether Community Bank has a perfected security interest in the Withheld Funds.

 Article 9 of the Uniform Commercial Code ("UCC"), codified as chapter 679, Florida Statutes, generally applies to accounts receivable. §§ 679.1091, 679.1021(1)(b), Fla. Stat. (2013). Dep't of Transp. v. United Capital Funding Corp., 219 So.3d 126 (Fla. 2d DCA 2017). " 'Attachment' is the coming into existence of a security interest; it relates to the creation and enforceability of a security interest between the parties to a transaction. In contrast, 'perfection' relates to the doing of some additional act, usually the filing of a financing statement, required to make the security interest effective as against third parties; a security interest cannot be perfected before it has attached." 47 *Fla. Jur 2d Secured Transactions* § 133 (2017). "A security interest is perfected when it attaches if the applicable requirements [for perfection] are satisfied before the security interest attaches." § 679.3081, Fla. Stat. (2013). Perfection of a security interest is, under the present circumstances, accomplished by the filing of a UCC–1 financing statement. § 679.3101, Fla. Stat. (2013). Here, neither Carrier nor Nelson disputes the existence of a perfected security interest held by Community Bank. The Court concludes no issue of material fact exists on this question and summary judgment is appropriate.

Accordingly, it is hereby ORDERED that Debtor's Motion is GRANTED. The Withheld Funds are property of the bankruptcy estate subject to a perfected security interest of Community Bank.

ORDERED.

**3.** For all practical purposes, the intent to earmark funds for a third party is the same as the intent to create a resulting trust for the benefit of a third party. In re G & R Builders, Inc., 123 B.R. 654, 658 (Bankr. M.D. Fla. 1990); In re Gentiluomo, 1994 WL 151047, at *6 (M.D. Fla. Apr. 12, 1994).