**In re COUNTRYSIDE MANOR, INC., Debtor.**

**Barbara L. Hankin, Trustee, Plaintiff,**

**v.**

**Mersey Mold & Model Co., Defendant.**

**Bankruptcy No. 94–24049.
Adversary No. 98–2019.**

United States Bankruptcy Court,
D. Connecticut.

Sept. 15, 1999.

---

Barbara L. Hankin, Westport, CT, for trustee-plaintiff.

James V. Sabatini, Tara K. Lyons, Sabatini & Associates, Newington, CT, for defendant.

### RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

#### I.

Barbara L. Hankin, Esq., the then trustee of the Chapter 11 estate of Countryside Manor, Inc. ("the plaintiff"), on February 9, 1998, filed a complaint against Mersey Mold & Model Co. ("the defendant"), seeking to recover two post-petition transfers to the defendant totaling $8,500 as unauthorized transfers of estate property. *See* 11 U.S.C. §§ 549(a)[1] and 550(a).[2] After

---

1. Section 549(a), in pertinent part, provides:
   (a) ... the trustee may avoid a transfer of property of the estate—
   (1) made after the commencement of the case; and

   ...
   (2)(B) that is not authorized under this title or by the court.

2. Section 550(a), in pertinent part, provides:

the defendant appeared and filed its answer, the plaintiff[3], on August 12, 1999, moved for summary judgment, with appropriate supporting papers, asserting that there are no genuine issues of material facts in dispute, and the plaintiff was entitled to judgment as a matter of law. The defendant, on September 2, 1999, filed an objection to the plaintiff's motion,[4] contending that genuine issues of material fact exist.

## II.

There is no meaningful dispute as to the following factual background. Countryside Manor, Inc. ("the debtor") filed a voluntary Chapter 11 petition on November 18, 1994, as an operator of a 90–bed skilled nursing home and facility in Bristol, Connecticut. The debtor remained in control of the nursing operation as a debtor in possession until July 3, 1996, when Barbara L. Hankin, Esq. became the operating trustee of the debtor's estate. During the period that the debtor was in control of its operation, the debtor's manager was Barry Hultman ("Hultman"), a licensed nursing home administrator.

Hultman during this period also owned and operated a business entity known as Infustek International Limited ("Infustek"). Infustek was in the business of developing and marketing an ambulatory infusion pump.

The defendant is in the business of building molds and molding plastic parts. In February and March 1996, the defendant submitted a "quotation" to Infustek to produce certain parts for the pump. Hultman, on behalf of· Infustek, on or about March 10, 1996, signed a purchase order, on Infustek stationery, for these parts.

The defendant, on June 14, 1996, sent Infustek an invoice for the produced parts in the amount of $9,500. The invoice showed that the defendant, on March 9, 1996 and June 13, 1996, received two checks in the separate amounts of $4,750 and $3,750 on account, with a remaining balance due of $1,000. The two checks, signed by Hultman, were made payable to the defendant, and on their face showed that they were drawn on the checking account of "Countryside Manor, Inc. Debtor In Possession Account." The court records do not indicate that the debtor was authorized to issue checks to the defendant for the parts delivered to Infustek.

The plaintiff contends these facts establish that the plaintiff is entitled to summary judgment to avoid the two check transfers and to recover the sum of $8,500 from the defendant. The defendant objects to the motion and lists the following material facts as to which it states there is a genuine issue to be tried:

"1. Whether the transfers from the Debtor to the Defendant occurred in the ordinary course of business pursuant to 11 U.S.C. § 363(c)(1).

2. Whether the cash collateral expenditures authorized by the Court included the expenditures for the products and services purchased from the Defendant.

3. Whether Barry Hultman was acting as an agent servant or employee of the Debtor in purchasing goods and services from the Defendant.

---

(a) ... to the extent that a transfer is avoided under section ... 549 ... the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from— (1) the initial transferee of such transfer....

**3.** The court, on August 26, 1999, converted the debtor's Chapter 11 case to one under Chapter 7, and Barbara L. Hankin, Esq. became the Chapter 7 trustee.

**4.** Papers filed by the defendant included copies of all court orders specifying the authorized use of cash collateral. The estate contains no nonliened assets.

4. Whether the goods and services purchased by the Defendant benefitted (sic) the bankruptcy estate.

5. The value of the molds manufactured by the Defendant."

*Defendant's Local Rule 9(c)(2) Statement* at 2.

The defendant submitted the single affidavit of Timothy Brown ("Brown"), its vice-president, in support of its argument that there are genuine issues to be tried. In the affidavit, Brown averred that he had no knowledge of what Infustek did except what Hultman told him; that Hultman identified his company as Infustek, which operated a nursing home; that Hultman told the affiant that the parts Hultman ordered from the defendant were to be used in an individual patient medicine delivery system that Hultman had designed or invented; that the parts the defendant produced were delivered to Hultman and have never been returned; that the defendant retains the molds from which the parts were generated; that Brown had no knowledge of the existence of the debtor or the pendency of the bankruptcy proceeding from February, 1996 to June, 1996; and that he personally did not see the checks which identified the debtor as a debtor in possession. The additional materials the defendant attached to its objection are of no significance to the issue before the court.

### III.

Fed.R.Civ.P. 56(c), made applicable in bankruptcy proceedings by Fed. R.Bankr.P. 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The court in deciding a summary judgment motion " 'cannot try issues of fact, but can only determine whether there are issues of fact to be tried.' " *R.G. Group,*

*Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (*quoting Empire Electronics Co. v. United States,* 311 F.2d 175, 179 (2d Cir.1962)) (emphasis in original). Facts asserted in affidavits by the party opposing the motion are taken as true. *First Nat'l Bank of Cincinnati v. Pepper,* 454 F.2d 626, 629 (2d Cir.1972). The moving party has the burden of proving that no material facts are in dispute, and in considering such a motion, the court "must 'resolve all ambiguities and draw all reasonable inferences in favor' of the non-moving party...." *Mikinberg v. Baltic S.S. Co.,* 988 F.2d 327, 330 (2d Cir.1993) (*quoting Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)). A dispute concerning a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### IV.

The court finds that there is no genuine issue as to the material facts sufficient to establish the elements of an avoidance action under § 549—that there was an unauthorized post-petition transfer of property of the estate. The defendant concedes that it received the checks at issue, that they are drawn on the account of the debtor-in-possession, that they were received after the bankruptcy petition was filed, and that purchase of the parts made by the defendant are not referred to in the court's cash collateral orders.

The burden of proving that the transfer at issue was valid, therefore, shifts to the defendant. Fed.R.Bankr.P. 6001 ("Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof."). The defendant argues that Hultman's involvement with both Infustek and the debtor raises the possibility that the parts produced by the defendant for Infustek were actually for the use and benefit of the debtor, and

that, if so, the transfer may have occurred in the "ordinary course of business", or that it may have been a purchase of "supplies" authorized under the court's cash collateral orders. The defendant, however, provides no evidence sufficient to raise a genuine issue of fact with regard to these conjectures. "Speculation by itself is not enough to defeat a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 15 (2nd Cir.1986). Fed. R.Civ.P. 56(e) provides, "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

With the decisional law regarding Rule 56(c) in mind, and accepting as true the factual allegations in Brown's affidavit, the court finds that the defendant has failed to provide any evidence in support of its theories as to the existence of genuine issues of fact. The circumstances that the defendant, as the initial transferee of the two checks, received the checks for value, in good faith and without knowledge of the voidability of the transfers, do not represent a defense to the plaintiff's action. Congress has specifically provided that those defenses have meaning only under the provisions of § 550(b)[5] as to parties other than other than initial transferees. These defenses do not apply to avoided transfers under § 550(a). The plaintiff is entitled to a judgment as a matter of law.

The defendant argues in its brief that should the court find the defendant liable, the court, on equitable grounds, "should limit [the defendant's] liability to a trans-

fer of the molds to the bankruptcy estate." (Defendant's Brief at 14.) The authorities which the defendant cites to support this argument are inapposite. *See, e.g., Gropper v. Unitrac, (In re Fabric Buys of Jericho, Inc.),* 33 B.R. 334 (Bankr.S.D.N.Y. 1983) (use of attorney's escrow account as conduit did not make attorney an initial transferee). No issue of the defendant being a "conduit" is presented in this proceeding.

## V.

The complaint requests costs and interest be awarded the plaintiff, if the plaintiff prevails, with interest computed from the date of demand. The materials the plaintiff submitted do not include any information as to the date of demand. The court will use the date of the filing of the complaint (February 9, 1998) as the date of demand and, in its discretion, will award interest from that date. *See Hirsch v. Steinberg (In re Colonial Realty Co.),* 226 B.R. 513, 526 (Bankr.D.Conn.1998) (prejudgment interest warranted to compensate for the value over time of the amount recovered unless such recovery unfair or inequitable—interest rate established by 28 U.S.C. § 1961 is appropriate interest rate.)

## VI.

### *CONCLUSION*

The plaintiff's motion for summary judgment is granted, and a judgment will enter that the defendant is liable to the plaintiff for the sum of $8,500, plus interest from February 9, 1998, and costs. It is

**SO ORDERED.**

---

5. Section 550(b) provides:

. . .

(b) The trustee may not recover under subsection (a)(2)of this section from—

(1) a [subsequent] transferee that takes for value, including satisfaction or secur-

ing of present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.