[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 16, 2010
JOHN LEY
CLERK

_____

No. 09-11759

_____

D. C. Docket No. 08-00432-CV-ORL-32
BKCY No. 06-3241-3P7

IN RE: DELCO OIL, INC.,

Debtor.

_____

MARATHON PETROLEUM CO., LLC.,

Defendant-Appellant,

versus

AARON R. COHEN,

Plaintiff-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 16, 2010)

Before EDMONDSON, BIRCH and BALDOCK,* Circuit Judges.

_____

* Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit,
sitting by designation.

BALDOCK, Circuit Judge:

Defendant-Appellant Marathon Petroleum Company, LLC (Marathon) appeals the district court's order affirming the bankruptcy court's grant of summary judgment in favor of Plaintiff-Appellee Aaron R. Cohen (Cohen). The issue presented to this Court is whether a bankruptcy trustee may avoid post-petition payments by a debtor under 11 U.S.C. § 549(a) and § 363(c)(2) as unauthorized transfers of cash collateral. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude in this case the trustee may avoid the debtor's unauthorized post-petition transfers of cash collateral. We, therefore, affirm the district court's decision affirming the bankruptcy court's entry of summary judgment in favor of Cohen.

I.

Delco Oil, Inc. (Debtor) is a distributor of motor fuel and associated products. Debtor began purchasing petroleum products from Marathon in 2003 pursuant to a sales agreement. Debtor also entered into a financing agreement with CapitalSource Finance in April 2006, in which CapitalSource agreed to provide financing to Debtor in exchange for Debtor's pledge of all rights to Debtor's personal property, including

2

collections, cash payments, and inventory.

On October 17, 2006, Debtor filed for Chapter 11 bankruptcy protection and filed an emergency motion with the bankruptcy court requesting authorization to use cash collateral to continue its operations. CapitalSource objected. The following day, the bankruptcy court authorized Debtor to continue its business as a debtor-in-possession. On November 6, 2006 the bankruptcy court denied Debtor's request to use its cash collateral (later reduced to a written order). Between October 18 and November 6, however, Debtor distributed over $1.9 million in cash to Marathon in exchange for petroleum products pursuant to its sales agreement.

In December 2006, Debtor voluntarily converted its bankruptcy to a Chapter 7 proceeding and the bankruptcy court appointed Cohen as trustee. Cohen filed an adversary proceeding against Marathon to avoid the post-petition cash transfers and ultimately filed the motion for summary judgment that is the subject of this appeal. The bankruptcy court granted summary judgment in favor of Cohen and entered a judgment for $1,960,088.91 against Marathon, concluding Debtor used CapitalSource's cash collateral to pay Marathon without authorization. On appeal, the

district court affirmed the bankruptcy court's entry of summary judgment in favor of Cohen.

## II.

We review a bankruptcy court's grant of summary judgment de novo, applying the same legal standard used by the bankruptcy court. See In re Kingsley, 518 F.3d 874, 876 (11th Cir. 2008) (applying the same standard for summary judgment as the bankruptcy court); In re Optical Tech. Inc., 246 F.3d 1332, 1334 (11th Cir. 2001) (explaining "that an appellate court reviews a bankruptcy court's grant of summary judgment *de novo*"); Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56's summary judgment standard applicable in bankruptcy adversary proceedings). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). We must view all evidence and make all reasonable inferences in favor of the nonmoving party in making this determination. Optical Tech., 246 F.3d at 1334. But "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to

4

which she has the burden of proof.'" In re Walker, 48 F.3d 1161, 1163 (11th Cir. 1995) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Moreover, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). As the Supreme Court has explained: "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## III.

The Bankruptcy Code defines cash collateral as:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . . whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a). The Bankruptcy Code prohibits the post-petition use of cash collateral by a trustee or a debtor-in-possession, unless the secured party or the bankruptcy court after notice and a hearing authorizes the use

of cash collateral upon a finding that the secured party's interest in the cash is adequately protected. See 11 U.S.C. § 1107 (providing a debtor-in-possession the rights, powers, functions and duties of a bankruptcy trustee); 11 U.S.C. § 363(c)(2) ("The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."); 11 U.S.C. § 363(e) ("[O]n request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."). Section 363(c)(2) balances competing interests in a Chapter 11 reorganization. As we have explained, a debtor reorganizing his business has a compelling need to use cash collateral in order to meet its daily operating expenses and rehabilitate its business. In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017, 1019 (11th Cir. 1984). At the same time, however, unhindered use of cash collateral, i.e., "secured 'property' may result in the dissipation of the estate." Id. Section 363(c)(2) resolves this tension

6

between a debtor and a secured creditor by only allowing the debtor to use cash collateral after it has procured either the secured creditor's or the bankruptcy court's permission upon a showing that the secured creditor's interest is adequately protected. Id.

Section 549(a) of the Bankruptcy Code authorizes a trustee to recover unauthorized post-petition transfers of estate property. See 11 U.S.C. § 549(a) ("[T]he trustee may avoid a transfer of property of the estate–(1) that occurs after the commencement of this case; and . . . (2)(b) that is not authorized under this title or by the court."). To avoid a transfer under Section 549(a) a trustee need only demonstrate: (1) a post-petition transfer (2) of estate property (3) which was not authorized by the Bankruptcy Code or the court. See 11 U.S.C. § 549(a) ("[T]he trustee may avoid a transfer of property of the estate–(1) that occurs after the commencement of the case; and (2)(B) that is not authorized under this title or by the court); Manuel v. Allen, 217 B.R. 952, 955 (Bankr. M.D. Fla. 1998) (explaining that pursuant to Section 549, "the criteria for avoidance are (1) a transfer; (2) of property of the estate; (3) which occurred postpetition; and (4) was not authorized by the Bankruptcy Code or the court"). After the trustee makes that showing, the party asserting

7

an established transfer's validity bears the burden of proving it valid. Fed. R. Bankr. P. 6001. Once a court finds a transfer avoidable, Section 550(a) allows the trustee to recover the property transferred from the initial transferee. See 11 U.S.C. § 550(a) ("[T]o the extent that a transfer is avoided under section . . . 549 . . . the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from—(1) the initial transferee of such transfer. . . .").

IV.

Marathon asserts the bankruptcy and district courts erred because a material issue of fact remains regarding whether the funds it received from Debtor actually constituted CapitalSource's cash collateral. Principally, Marathon argues that the funds did not constitute CapitalSource's cash collateral under Fla. Stat. § 679.332(2) (a replica of U.C.C. § 9-332(b)), which provides that "[a] transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party." Fla. Stat. § 679.332(2). Relying on this Florida law, Marathon contends upon receipt of the funds they became free of

8

CapitalSource's security interest and, therefore, the funds were not cash collateral.[1]

Despite Marathon's contentions otherwise, Florida's Section 679.332(2) does not alter the fact that CapitalSource had a security interest in Debtor's deposit account funds as proceeds of CapitalSource's properly secured collateral while they were in Debtor's hands. See Fla. Stat. § 679.3151(1)(b) and (3) ("A security interest attaches to any identifiable proceeds of collateral" and that security interest in the proceeds is deemed perfected "if the security interest in the original collateral was perfected."); 11 U.S.C. § 552(b)(1)(2) (explaining that if a debtor and an entity enter into a security agreement before the debtor files bankruptcy and if the resulting security interest extends to debtor's

[1] In response, Cohen argues Marathon did not raise this argument before the bankruptcy or district courts. Marathon responds it consistently argued in both courts that it received Debtor's funds free of a security interest, which it claims encompasses its Section 679.332(2) argument. After reviewing all of the briefing before the bankruptcy and district courts, we conclude Marathon never even mentioned Section 679.332(2) or its U.C.C. equivalent, U.C.C. § 9-332(b), let alone made the argument that upon its receipt of the controverted funds the funds were free of CapitalSource's security interest because of Section 679.332(2) and, therefore, were not cash collateral as defined by 11 U.S.C. § 363(a). We, however, have no desire to split hairs. To the extent that Cohen as trustee may only avoid these cash payments under Section 549 as unauthorized distributions of cash collateral as defined by Section 363(a) if the funds were, in fact, subject to a valid security interest, we address the question of law presented: Were the funds Debtor paid to Marathon subject to a valid security interest under Florida law? For reasons explained herein, the answer is yes.

9

property acquired before bankruptcy and its proceeds, then that security interest also extends to proceeds acquired by the estate after the debtor entered bankruptcy to the extent provided by the security agreement and by applicable nonbankruptcy law). Therefore, those cash proceeds constituted cash collateral as defined by 11 U.S.C. § 363(a), and pursuant to 11 U.S.C. § 363(c)(2), Debtor could not transfer them to anyone without the authorization of CapitalSource or the bankruptcy court. Marathon correctly notes that under Fla. Stat. § 679.332(2) after Debtor transferred the funds to it, the funds in its hands were no longer subject to CapitalSource's security interest. Such a result, however, has no bearing on the following dispositive facts: (1) The bankruptcy code prohibited the transfer to Marathon altogether, because CapitalSource had a perfected security interest in Debtor's cash proceeds while they were in Debtor's hands, and (2) the bankruptcy code allows the trustee to avoid and take back unauthorized transfers. Marathon does not cite a single case from any circuit to dispute this conclusion, nor are we aware of any.[2]

---

[2] Marathon cites many cases in support of the proposition that the security interest in the proceeds of secured collateral does not survive once the proceeds are transferred by a debtor from a deposit account (that the secured creditor does not have deposit control agreement over) to a third party in the ordinary course of business and, therefore, the secured party cannot recover them from the third party. See e.g., Harley-

(continued...)

Lest any confusion exist, Cohen may avoid and recover from Marathon the funds Debtor transferred to it not because CapitalSource continued to have a security interest in the funds once they were in the hands of Marathon, but because Debtor was not authorized to transfer the funds to anyone post-petition without the permission of CapitalSource or the bankruptcy court.  We agree with Marathon that under Florida law, CapitalSource did not have a security interest in the funds *after* Debtor transferred them to Marathon.  But that is beside the point.  To ascertain whether Debtor could lawfully transfer the funds in its deposit accounts to a third party without permission from CapitalSource or the bankruptcy court, we first determine whether those funds were cash collateral.  To determine whether the funds constitute cash collateral, we examine the status of the funds while they were in Debtor's hands before the disputed transfer, not at the moment the bankruptcy petition was filed and certainly

[2](...continued)
Davidson Motor Co., Inc. v. Bank of New England-Old Colony, N.A., 897 F.2d 611, 619–20 (1st Cir. 1990); Keybank Nat. Ass'n v. Ruiz Food Prod., Inc., 2005 WL 2218441, *6–*7 (D.Idaho 2005).  But none of the cases Marathon cites address a debtor in bankruptcy and the application of 11 U.S.C. § 363(c)(2)'s prohibition on the distribution of cash collateral without the authorization of the secured creditor or the bankruptcy court.  Moreover, none of them contradict the conclusion that proceeds of secured collateral remain subject to a security interest while in the debtor's hands, though the debtor may subsequently transfer the proceeds to third parties.

11

not at the moment after the funds left Debtor's control.  See 1 Collier on Bankruptcy § 363.04[1] (3d ed. 1991) ("[T]he definition of 'cash collateral' is not restricted to property of the estate that fits within the [Section 363(a)] terminology on the date of the filing of the petition."); In re S. Ill. Railcar Co., 301 B.R. 305, 314 (Bankr. S.D. Ill. 2002) (explaining that "[a] pre-petition security interest in proceeds and profits generated by pre-petition property of a bankruptcy estate extends to post-petition proceeds and profits generated by that property" and such post-petition proceeds may comprise cash collateral); George Ruggiere, 727 F.2d at 1019 (defining the proceeds of a creditor's security interest in debtor's property as cash collateral while the proceeds were still in debtor's hands; the court did not consider the status of the proceeds once transferred and in the possession of the debtor's proposed recipients). Otherwise, a debtor could circumvent Section 363(c)(2)'s prohibition on the use of cash collateral without the secured creditor's or bankruptcy court's permission by distributing cash proceeds it knows are subject to a security interest as it likes, knowing that once distributed the proceeds would not be defined as cash collateral under Section 363(a) and, therefore, the transfer would not violate Section 363(c).  Such an outcome

12

would render Section 363(c) virtually meaningless, leaving a debtor generally free to transfer cash or its equivalent that is subject to a security interest. Cohen, therefore, retains the power to avoid and recover these funds because *before* Debtor transferred them they constituted the proceeds of CapitalSource's perfected security interest in all of Debtor's personal property and, therefore, they constituted cash collateral which Section 363 prohibited Debtor from transferring to anyone without CapitalSource's or the court's permission.

Marathon also argues that the deposit account funds that Debtor transferred to it did not constitute cash collateral because CapitalSource did not perfect an interest in Debtor's deposit account by filing a deposit control agreement. But this argument is equally unpersuasive. Florida law provides "a security interest attaches to any identifiable proceeds of collateral" and "a security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected." Fla. Stat. § 679.3151(1)(b) and (3). No one disputes CapitalSource had a perfected security interest in all of Debtor's personal property. Thus, if the cash transferred constituted the proceeds of CapitalSource's collateral, CapitalSource need not have had a deposit account control agreement to

13

perfect its security interest in the cash transferred.

Marathon, however, maintains a genuine issue of fact exists as to whether the funds it received from Debtor's accounts were identifiable proceeds of CapitalSource's secured collateral. In support of its motion for summary judgment, Cohen submitted the affidavit of Todd Gehrs, an officer of CapitalSource. In his affidavit, Gehrs stated that CapitalSource had duly perfected, first-priority security interests in all of Debtor's personal property, including all of Debtor's cash, accounts receivable, inventory, all cash collections, all rights to payment, and all proceeds thereof as of the bankruptcy petition date. Gehrs further stated all cash and all bank deposits maintained by Debtor as of the bankruptcy petition date constituted CapitalSource's cash collateral. Additionally, he noted that the bankruptcy court in the underlying bankruptcy proceeding had already concluded that "CapitalSource [had] established that the post-petition funds in Debtor's bank accounts, constitute direct proceeds of its pre-petition collateral without the addition of other estate resources." In re Delco, 365 B.R. 246, 248 (Bankr. M.D. Fla. 2007).

Marathon claims two problems exist with reliance on this affidavit. First, Marathon claims the affidavit introduces "through the backdoor"

14

findings that cannot be used directly against Marathon because it was not a party to the underlying bankruptcy proceedings cited by Gehrs and, therefore, cannot be bound by findings made in those proceedings. And, second, Marathon contends the sole basis cited by Gehrs's assertion that the cash in Debtor's deposit accounts were identifiable proceeds of CapitalSource's secured collateral is the bankruptcy court's inadmissible determination that Debtor's deposit accounts consisted solely of the identifiable proceeds of CapitalSource's pre-petition secured collateral.

The district court in its order explained that even though the bankruptcy court expressly based its summary judgment ruling on its prior decisions in the underlying Chapter 7 bankruptcy proceeding to which Marathon is not a party, it found that the unrebutted affidavit of Gehrs alone was sufficient to determine that no genuine issue of fact remained as to whether the cash received by Marathon constituted CapitalSource's cash collateral. The district court stated Cohen presented evidence that all cash and all bank deposits in Debtor's possession as of the petition date constituted CapitalSource's cash collateral. As the district court accurately noted, Marathon has failed to present any specific facts or even a possible theory as to where the almost $2 million transferred could have

15

come from, if not from CapitalSource's cash collateral. Marathon concedes CapitalSource had perfected security interests in all of Debtor's personal property, including inventory, cash payments, rights to collections, and all proceeds thereof. When asked at oral argument "if there is anything in this record . . . that creates a genuine issue of material fact" as to whether the funds were anything but CapitalSource's cash collateral Marathon's counsel admitted "I don't think there is anything in this record specifically on that point." Given those concessions and the evidence Cohen presented, we fail to see where else Debtor's cash could have come from other than the proceeds of its inventory, cash payments, or collections, in all of which CapitalSource had a security interest. Thus, Marathon's suggestion that there might have been some unidentified source of the deposit account funds that was beyond the ambit of CapitalSource's blanket lien is pure speculation and does not create a genuine issue of material fact. See Matsushita, 475 U.S. at 586 (explaining that an opponent to summary judgment must show more than merely "some metaphysical doubt as to the material facts").

V.

In addition, Marathon also argues assuming that the funds

16

constituted cash collateral Cohen may not avoid the payments because any violation of Section 363(c)(2) caused no harm to CapitalSource or the estate. Marathon asserts it gave equivalent value in inventory for the funds transferred to it by Debtor through a series of ordinary course transactions. Because CapitalSource admittedly had a perfected security interest in all of Debtor's personal property, Marathon claims CapitalSource's interests were not diminished when Debtor received equivalent value in petroleum products from Marathon in exchange for the funds.

But a "harmless" exception to a trustee's Section 549(a) avoiding powers does not exist.[3] All Cohen needs to demonstrate to avoid the transfers under Section 549(a) is: (1) an unauthorized transfer occurred; (2) the property transferred was property of the estate; and (3) the transfer occurred post-petition. Section 549 does not require any analysis of the adequacy of protection of secured creditors' interests nor does it provide a harmless error exception. No genuine doubt exists that Debtor's transfers

---

[3] Congress created two exceptions to a trustee's Section 549 avoiding power: First, subsection (b), which involves only involuntary bankruptcy cases and, second, subsection (c), which protects good faith purchasers of real property. As this is a voluntary bankruptcy involving the transfer of cash in exchange for personal property, neither exception provided by Congress applies.

17

to Marathon were unauthorized because Debtor completed them without the permission of CapitalSource or the bankruptcy court in express violation Section 363(c)(2).

Finally, Marathon argues that as a matter of policy an implicit defense exists under Section 549 for ordinary course transfers and for innocent vendors who deal with a debtor-in-possession. These arguments do not persuade us. Section 363(c)(1) allows a debtor-in-possession acting as a trustee to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing . . . ." Subsection (c)(2), however, forbids a debtor-in-possession from using "cash collateral under paragraph (1) of this subsection *unless*–(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use . . . ." (emphasis added). Congress's prohibition on the use of cash collateral in (c)(2) is a specific limitation on the express ability provided in (c)(1) to use estate property in the ordinary course of business. Congress evidently did not intend to allow the use of cash collateral without the permission of the interested secured creditor or the bankruptcy court, even if used in the ordinary course of business.

18

As to Marathon's status as an "innocent vendor," Sections 549(a) and 550(a) by their terms contain no reference to, let alone an actual defense based on, the transferee's status (vendor, purchaser, etc.) or upon its state of mind (innocent, culpable, etc.). See e.g., In re Countryside Manor, Inc., 239 B.R. 443, 447 (Bankr. D. Conn. 1999) (explaining that the circumstances that the defendant received the cash collateral for value, in good faith and without knowledge of the voidability of the transfers, do not provide a defense to the trustee's power to avoid the transfer under Sections 549(a) and 550(a) because the defendant as the initial transferee of the cash collateral received it without the court's or secured creditor's permission). Congress knew how to create exceptions based on transferee's status and culpability. But it chose not to do so when it came to initial transferees of post-petition transfers of cash collateral. We will not create such exceptions in Congress's absence.

## VI.

Having admitted CapitalSource had a perfected security interest in all of Debtor's inventory, collections, and cash payments, Marathon has provided nothing more than mere speculation to support its claim that the over $1.9 million it received from Debtor did not constitute

19

CapitalSource's cash collateral as defined in Section 363(a). We, therefore, agree with the bankruptcy and district courts that no genuine issue of fact exists as to whether the disputed payments to Marathon constituted unauthorized transfers of cash collateral, which are avoidable under Section 549(a). Furthermore, we conclude no exception exists to prevent Cohen from avoiding these transfers pursuant to Section 549(a) and recovering the funds from Marathon pursuant to Section 550(a). Consequently, the judgment of the district court is AFFIRMED.