In re WOOD TREATERS, LLC, Debtor.

Doreen Abbott, Chapter 7 Trustee, Plaintiff,

v.

Arch Wood Protection, Inc., Defendant.

Bankruptcy No. 3:09–bk–1895–PMG.
Adversary No. 3:11–ap–205–PMG.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 25, 2012.

Eyal Berger, Jacob A. Brown, Katherine Coxe Fackler, Fort Lauderdale, FL, for Plaintiff.

Alessandro A. Apolito, Robert D. Wilcox, Brennan Manna & Diamond PL, Jacksonville, FL, Brian P. Hall, Smith Gambrell & Russell, LLP, Atlanta, GA, for Defendant.

## ORDER ON (1) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND (2) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider (1) the Motion for Summary Judgment filed by the Plaintiff, Doreen Abbott, as Chapter 7 Trustee, and also to consider (2) the Motion for Summary Judgment filed by the Defendant, Arch Wood Protection, Inc.

On March 16, 2009, Wood Treaters, LLC, filed a petition under Chapter 11 of the Bankruptcy Code. While the Debtor operated as a Chapter 11 Debtor in Possession, it used its secured creditors' cash collateral to purchase certain goods from the Defendant. After the purchases were made, the case was converted to a case under Chapter 7 of the Bankruptcy Code.

In this adversary proceeding, the Chapter 7 Trustee seeks to avoid and recover the payments made by the Debtor to the Defendant as unauthorized, postpetition transfers of cash collateral pursuant to § 549 of the Bankruptcy Code. According to the Trustee, the transfers were not authorized because they were made without the lienholder's consent, and in violation of certain Cash Collateral Orders that had been entered in the Chapter 11 case.

The Motions for Summary Judgment filed by the Trustee and the Defendant should be denied. First, as a jurisdictional matter, the Trustee must establish that the estate suffered an injury that is redressable by a judgment in her favor. In this case, summary judgment is not appropriate because issues of fact exist regarding whether the estate was diminished as a result of the Debtor's transfers to the Defendant.

Additionally, in order to prevail under § 549, the Trustee must show that the

transfers were not authorized either by the Bankruptcy Code or by the Court. In this case, summary judgment is not appropriate because issues of fact exist regarding (1) whether the Debtor's secured creditors had consented to the use of their cash collateral within the meaning of § 363(c)(2) of the Bankruptcy Code, and (2) whether the transfers were made at a time when the Debtor was not in compliance with the Cash Collateral Orders.

### Background

The Debtor filed a petition under Chapter 11 of the Bankruptcy Code on March 16, 2009. The business of the Debtor involved the manufacture and sale of preserved wood products and other building supplies. On March 18, 2009, the Court entered an Order authorizing the Debtor to operate its business.

On the schedules initially filed by the Debtor, Regions Bank was listed as a secured creditor holding a "blanket lien on all assets and accounts" of the Debtor. On March 25, 2009, the Debtor filed a Motion for Authority to use the cash collateral of Regions Bank during its Chapter 11 case.

Pursuant to the Debtor's Motion and the parties' agreement, the Court entered three Cash Collateral Orders in this case: (1) on April 22, 2009, the Court entered a Consent Order Allowing the Use of Cash Collateral for the Period Ending May 15, 2009; (2) on May 19, 2009, the Court entered a Consent Order Allowing Interim Use of Cash Collateral for the Period Ending July 15, 2009; and (3) on August 12, 2009, the Court entered a Final Consent Order Allowing the Use of Cash Collateral. Generally, the Final Consent Order provided that the Debtor was authorized to use Regions Bank's cash collateral subject to the conditions contained in the agreed Order. Paragraph 8 of the Final Consent Order provided:

8. On the date Debtor filed its Bankruptcy, pursuant to Debtor's Bankruptcy Schedules, the combined value of its accounts receivables and inventory totaled $1,425,026 (hereinafter "Baseline Balance").... If the combined value of Debtor's deposit accounts, Eligible Accounts and inventory (hereinafter "Combined Balance") decreases below the Baseline Balance, Debtor shall pay Regions an additional adequate protection payment in the amount equal to the Baseline Balance less the Combined Balance of deposit accounts, Eligible Accounts and inventory (hereinafter "Additional Adequate Protection Payment"). The Additional Adequate Protection Payment shall be due within five (5) days after the Combined Balance decreases below the Baseline Balance. *If the Combined Balance decreases below the Baseline Balance, Debtor shall not be authorized to use Cash Collateral until Debtor pays Regions the Additional Adequate Protection Payment.*

(Doc. 56, pp. 4–5)(Emphasis supplied). Paragraph 9 of the Final Consent Order authorized the Debtor to use cash collateral "in the ordinary course of business to make disbursements in accordance with the projected monthly budget." (Doc. 56, p. 5).

After the Final Consent Order was entered, between February of 2010 and April 14, 2010, the Debtor purchased certain products from the Defendant in three separate transactions. In connection with the transactions, the Debtor paid the Defendant the sums of $49,693.72, $49,733.97, and $49,673.60, respectively.

On April 15, 2010, Regions Bank assigned its secured claim to 2010 Angelina Capital Fund, LLC (Angelina).

Between May of 2010 and July of 2010, the Debtor purchased certain products from the Defendant in five additional

transactions. In connection with these transactions, the Debtor paid the Defendant the sums of $18.88, $49,693.72, $49,693.72, $488.05, and $48,027.64, respectively.

On July 19, 2010, Angelina filed an Emergency Motion to Terminate Use of Cash Collateral Based on Debtor's Violation of Cash Collateral Order.

On July 26, 2010, the Court entered an Order Terminating the Debtor's Authority to Use Cash Collateral, and the case was converted to a case under Chapter 7 of the Bankruptcy Code. Doreen Abbott was appointed as the Chapter 7 Trustee.

### Discussion

On April 19, 2011, the Trustee commenced an adversary proceeding to avoid and recover the payments made by the Debtor to the Defendant as unauthorized postpetition transfers. The action is brought pursuant to § 549(a) of the Bankruptcy Code, which provides:

**11 U.S.C. § 549. Postpetition transactions**

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is *not authorized under this title or by the court.*

11 U.S.C. § 549(a) (Emphasis supplied). A Chapter 11 debtor's authorization to use cash collateral "under this title or by the court" is governed by § 363(c)(2) of the Bankruptcy Code. Section 363(c)(2) provides:

**11 U.S.C. § 363. Use, sale, or lease of property**

\*      \*      \*

(c)(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2). In this case, the Trustee asserts that the Debtor's payments to the Defendant were not authorized under § 363(c)(2), because neither Regions Bank nor Angelina consented to the use of their cash collateral outside of the terms of the Cash Collateral Orders, and because the Debtor was not in compliance with the Final Consent Order at the time that the transfers were made.

The Defendant contends, as a preliminary matter, that the Trustee lacks standing to bring the action, because she has not shown that the transfers of cash collateral caused an injury to the Debtor's estate. Specifically, the Defendant contends that the estate was not injured because it received goods of equal value in exchange for the transfers.

### A. The jurisdictional issue

The Trustee asserts that she is only required to establish three elements to avoid a transfer under § 549(a) of the Bankruptcy Code: (1) a post-petition transfer (2) of property of the estate (3) that was not authorized by the Bankruptcy Code or the Court. (Doc. 27, p. 11; Doc. 53, p. 11). According to the Trustee, the question of whether the estate received value in exchange for the transfer is irrelevant, because injury to the estate is not an element of a claim under § 549(a). (Doc. 53, p. 12; Transcript, pp. 19, 71, 93).

To support her contention, the Trustee relies primarily on the decision of the

Eleventh Circuit Court of Appeals in *In re Delco Oil, Inc.*, 599 F.3d 1255 (11th Cir. 2010). In *Delco*, the Eleventh Circuit stated that § 549(a) does not contain an exception to the trustee's avoiding powers for "harmless" unauthorized transfers. The Court therefore rejected the assertion in that case that the debtor's transfers were not avoidable because they had been made in exchange for equivalent value. *In re Delco Oil, Inc.*, 599 F.3d at 1262.

■ The factual situation in *Delco* is materially different from the situation in the case currently before the Court, and the issue of injury to the estate was not evaluated by the Eleventh Circuit as a jurisdictional question. Consequently, it does not appear that the Eleventh Circuit's decision in *Delco* precludes this Court from considering the question of injury to the estate in determining whether the Trustee has established her avoidance claim under § 549(a). Further, the Court's consideration of injury to the estate is consistent with the underlying purpose of the Bankruptcy Code's avoidance provisions to preserve the estate's assets for an equitable distribution to creditors.

### 1. The factual background in Delco

In *Delco*, the debtor was a distributor of fuel and related products. In the three-week period immediately after it filed its Chapter 11 case, the debtor transferred more than $1,900,000.00 to Marathon Petroleum Co., LLC to purchase petroleum products. The Debtor was never authorized to use cash collateral. Two months after the Chapter 11 petition was filed, the case was converted to a case under Chapter 7, and the Chapter 7 trustee filed an action to avoid the transfers to Marathon. *In re Delco Oil, Inc.*, 599 F.3d at 1257.

The primary issue addressed by the Eleventh Circuit was whether the transferred funds constituted cash collateral of the debtor's lender under Florida law. The Court ultimately concluded that the funds were cash collateral of the lender within the meaning of § 363(a) of the Bankruptcy Code. *Id.* at 1259–62.

Second, the Court addressed Marathon's contention that the transfers were not avoidable by the trustee because the payments did not cause any harm to the lender or the bankruptcy estate. In this regard, Marathon asserted that the lender's interests had not been diminished by the transfers, since its lien attached to the products purchased by the debtor with the funds. Marathon did not assert the claim as a jurisdictional challenge to the trustee's standing. *Id.* at 1262.

The Eleventh Circuit did not accept Marathon's defense. Instead, the Court found that "a 'harmless' exception to a trustee's Section 549(a) avoiding powers does not exist," and that § 549(a) "does not require any analysis of the adequacy of protection of secured creditors' interests nor does it provide a harmless error exception." *Id.*

The Court's rejection of Marathon's "harmless" defense, however, arose in a factual background that is materially different from the situation in the case before the Court. The difference is evident in the Eleventh Circuit's recitation of the history of Delco's bankruptcy case:

On October 17, 2006, Debtor filed for Chapter 11 bankruptcy protection and filed an emergency motion with the bankruptcy court requesting authorization to use cash collateral to continue its operations. CapitalSource objected. The following day, the bankruptcy court authorized Debtor to continue its business as a debtor-in-possession. *On November 6, 2006, the bankruptcy court denied Debtor's request to use its cash collateral (later reduced to a written*

*order).* Between October 18 and November 6, however, Debtor distributed over $1.9 million in cash to Marathon in exchange for petroleum products pursuant to its sales agreement.

In December 2006, Debtor voluntarily converted its bankruptcy to a Chapter 7 proceeding and the bankruptcy court appointed Cohen as trustee.

*Id.* at 1257 (Emphasis supplied). In other words, the debtor in the *Delco* case *never* obtained any authority from the Court to use its lender's cash collateral under any conditions, despite its request, and the lender *never* consented to the use of its cash collateral under any terms. Further, the debtor in *Delco* made the purchases, which totaled almost $2 million, within the three-week period immediately after the Chapter 11 case was filed, while its motion was pending but before it was decided. The debtor then converted its Chapter 11 case to a Chapter 7 case only two months after it was filed, without ever having received permission to use cash collateral to operate its business.

The factual background in *Delco*, therefore, is significantly different from the facts of the case before the Court. In this case, the Chapter 11 petition was filed on March 16, 2009, and the case was converted to a case under Chapter 7 on July 26, 2010. Consequently, the Debtor operated its business under Chapter 11 for more than sixteen months. During that period, the Debtor obtained agreed Orders authorizing it to use cash collateral, filed monthly operating reports, obtained approval from the Court to hire an accountant, and filed a Disclosure Statement and Plan of Reorganization which contemplated the continued operation of its business. The transfers that are the subject of this proceeding occurred a year after the Chapter 11 was filed, during the Debtor's efforts to reorganize.

The circumstances of this case are materially different from the circumstances in *Delco*, where the debtor never successfully launched its reorganization efforts under Chapter 11, and where the debtor spent almost $2 million before the Court had an opportunity to review its request to use cash collateral. Additionally, Marathon's "value" defense in *Delco* focused on whether the lender's interest had been adequately protected, and not on whether the estate had been injured. For these reasons, it does not appear that the Eleventh Circuit's decision in *Delco* precludes this Court from considering the question of injury to the estate in determining whether the Trustee established her avoidance claim under § 549(a).

**2. Injury to the estate**

In *Delco*, Marathon claimed that the lender's interest was not diminished by the transfers, because the lender's postpetition lien attached to the goods that the debtor purchased. The issue of injury to the estate was not evaluated by the Eleventh Circuit as a jurisdictional question.

Any party who invokes federal jurisdiction "bears the burden of demonstrating his standing to sue. To demonstrate standing, a party must show: (1) he has suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *In re Whittle,* 449 B.R. 427, 429 (Bankr.M.D.Fla.2011) (citing *Mulhall v. UNITE HERE Local 355,* 618 F.3d 1279, 1286 (11th Cir.2010)).

Article III of the Constitution provides that federal courts may only hear cases or controversies. U.S. Const. Art. III, sec. 2, cl. 1. Standing is an essential part of the case or controversy requirement. The constitutional minimum requirements of standing require a

plaintiff to demonstrate (1) an injury in fact; (2) that the injury is fairly traceable to the alleged misconduct of the defendant; and (3) that a favorable decision is likely to redress the injury. The Supreme Court has also made clear that an "injury in fact" must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

*In re Alcantara*, 389 B.R. 270, 275 (Bankr. M.D.Fla.2008). See also *In re Mirant Corporation*, 675 F.3d 530, 533 (5th Cir. 2012) (For constitutional standing, a plaintiff is required to have suffered an injury that is concrete and actual.), and *In re Otero County Hospital Association, Inc.*, 2012 WL 1196565, at *3 (Bankr.D.N.Mex.) (The "case or controversy" requirement of Article III of the Constitution requires a plaintiff to show an injury in fact.).

In *In re Indian Capitol Distributing, Inc.*, 2011 WL 4711895 (Bankr.D.N.Mex.), for example, the debtor had purchased petroleum products from a vendor during its Chapter 11 case, and the facts established that the value of the products delivered by the vendor was reasonably equivalent to the amount of the debtor's payments. A trustee in the case later filed an action under § 549 to avoid the payments to the vendor, based "solely" on the allegation that the payments were not authorized under § 363(c). *In re Indian Capitol*, 2011 WL 4711895, at *2–*6, *9.

The Court in *Indian Capitol* recognized that an "injury in fact" is a core requirement of federal jurisdiction under Article III, § 2 of the United States Constitution. *Id.* at 6–7. In that case, since the value of the goods delivered by the vendor was reasonably equal to the amount paid by the debtor, the Court found that the trustee had "not established (or even alleged) that the estate suffered an injury." Consequently, the Court dismissed the trustee's action without prejudice to the trustee's right to re-file the claim in the event that he could show that the estate suffered an actual loss as a result of the debtor's transactions. *Id.* at 11.

In the case before the Court, as in *Indian Capitol*, the Defendant alleges that the bankruptcy estate did not suffer an actual injury from its transactions with the Debtor, because the Debtor's payments were made in exchange for goods of equal value. Consequently, the Defendant asserts that the Trustee lacks standing to bring the action under § 549 of the Bankruptcy Code. In this case, therefore, as in *Indian Capitol*, the Court may consider the question of injury to the estate as a jurisdictional matter under Article III of the Constitution. The Eleventh Circuit's decision in *Delco* does not preclude the analysis of exchanged value, since the facts in *Delco* were materially different from the situation in this case, and since the issue of injury to the estate was not evaluated by the Eleventh Circuit as a jurisdictional question.

### 3. The purpose of § 549

Further, the Court's consideration of injury to the estate is consistent with the underlying purpose of the Bankruptcy Code's avoidance provisions to preserve the estate's assets for an equitable distribution to creditors.

The avoidance provisions permit a trustee to achieve a primary goal of the bankruptcy process to "pursue as equal a distribution of assets to creditors as possible." *In re Furrs*, 294 B.R. 763, 775 (Bankr. D.N.Mex.2003).

With specific reference to postpetition transfers, the Court explained the function

of § 549(a) in *In re PSA, Inc.*, 335 B.R. 580, 584 (Bankr.D.Del.2005), as follows:

> The purpose of section 549 is to allow the trustee to avoid *those postpetition transfers which deplete the estate* while providing limited protection to transferees who deal with the debtor.

*In re PSA, Inc.*, 335 B.R. at 584 (quoted in *In re Tolkin*, 2011 WL 1302191, at *5 (Bankr.E.D.N.Y.) (Emphasis supplied)). See also *In re Steel Wheels Transport, LLC*, 2011 WL 5900958, at *6 (Bankr. D.N.J.) (A postpetition transfer should be avoided to the extent that it depletes the estate and offends the priority scheme of the Bankruptcy Code.).

The focus of § 549 and § 550, which provides for the recovery of an avoided transfer "for the benefit of the estate," is on "what the bankruptcy estate lost as a result of the transfer." *In re C.W. Mining Company*, 465 B.R. 226, 233–34 (Bankr.D.Utah 2011) (Summary judgment was granted in favor of a defendant in a § 549 action, where "the bankruptcy estate lost no value as a result of the transfer.").

In other words, the Court may consider the issue of injury to the estate in determining whether a trustee may avoid a postpetition transfer under § 549(a) of the Bankruptcy Code. The issue is central to the jurisdictional requirement of "injury in fact," and is also consistent with the purpose of § 549 to permit the avoidance of transfers that diminish the bankruptcy estate.

### 4. Issues of fact

In this case, however, issues of fact exist regarding whether the estate was diminished as a result of the Debtor's payments to the Defendant.

The Trustee asserts that the value of the products obtained from the Defendant in exchange for the payments did not equal the amount of the transfers, and that the estate was therefore damaged by the transactions. (Doc. 53, ¶¶ 29, 30, p. 13). To support her contention, the Trustee filed the Affidavit of Doreen Abbott, Chapter 7 Trustee. In an Affidavit dated April 18, 2012, the Trustee stated:

> 6. The bankruptcy estate was damaged by the Transfers (as defined in the Amended Complaint). When accounting for overhead and environmental liabilities, among other things, I do not believe goods and services supplied to the Debtor are equivalent in value to the cash on hand.

(Doc. 53, Exhibit E, ¶ 6). Based on the books and records, therefore, the Trustee asserts that "the goods in don't necessarily equal the money out." (Transcript, p. 25).

The Defendant, on the other hand, contends that the transfers did not cause any legally cognizable injury to the bankruptcy estate, because the goods that it delivered were equal in value to the payments that it received. (Doc. 41, p. 10). To support its contention, the Defendant submitted the Affidavit of the Debtor's principal, Norman Woerner. In his Affidavit, Woerner stated:

> 33. The goods that Wood Treaters received from Defendant were at least equal in value to the money that Wood Treaters paid for the goods.
>
> \*       \*       \*
>
> 38. For each transaction, the value of what Wood Treaters received was at least as great as the amount of the payment Wood Treaters made.

(Doc. 41, Exhibit A, ¶¶ 33, 38). Additionally, the Defendant submitted the Affidavit of its Vice President, Industrial Sales, Grady Brafford. In his Affidavit, Brafford stated:

8. Arch supplied goods to Wood Treaters on ordinary business terms in response to purchase requests from Wood Treaters.

9. The goods that Wood Treaters received from Arch were at least equal in value to the money that Wood Treaters paid for the goods.

10. Wood Treaters paid for the goods within ten days of delivery in order to receive a discount on the invoices from Arch.

(Doc. 52, ¶¶ 8–10). The Defendant contends that the Affidavits establish that "the goods that Wood Treaters received from the defendants were at least equal in value to the money that Wood Treaters paid for the goods." (Transcript, p. 51).

Based on the Affidavits and record, the Court finds that summary judgment is not appropriate in this case, because issues of fact exist regarding whether the estate was diminished as a result of the Debtor's payments to the Defendant. Accordingly, the Court cannot find as a matter of law that the estate suffered an injury that is redressable by a judgment in the Trustee's favor, or that federal jurisdiction was properly invoked in this case.

**B. Authorized transfers**

■ In addition to the jurisdictional requirement of an injury to the estate, to prevail in an action under § 549(a) the Trustee must show "that there was (1) a transfer; (2) of estate property; (3) that was not authorized; (4) after the commencement of the case." *In re Housey*, 409 B.R. 611, 617 (Bankr.D.Mass.2009) (quoting *In re Fadili*, 365 B.R. 7, 14 (Bankr.D.Mass.2007)).

Of these four elements, the primary dispute in this case involves whether the postpetition payments by the Debtor to the Defendant were "authorized" under the

Bankruptcy Code or by the Court. (Transcript, p. 13).

It appears undisputed that the Debtor made the payments with the cash collateral of Regions Bank or Angelina. As shown above, § 363(c)(2) of the Bankruptcy Code provides that a debtor's use of cash collateral is "authorized" if the secured creditor consents, or if the Court authorizes the use. 11 U.S.C. § 363(c)(2). The question before the Court, therefore, is whether (1) Regions and Angelina had consented to the payments, or whether (2) the payments were authorized by the Court in the Cash Collateral Orders entered in the Chapter 11 case.

■ The Court finds that summary judgment is not appropriate in this case, because issues of fact exist regarding whether the secured creditors consented to the payments to the Defendant, and whether the payments were made in compliance with the Court's Cash Collateral Orders.

**1. Consent to use of cash collateral**

When the Chapter 11 petition was filed, Regions Bank was scheduled as a secured creditor with a lien on all of the Debtor's assets and accounts. On April 15, 2010, Regions Bank assigned its secured claim to Angelina. (Main Case, Doc. 79). Some of the transfers at issue in this proceeding occurred before the claim was assigned, and some of the transfers occurred after the assignment.

First, the Court finds that issues of fact exist regarding whether Regions Bank had consented to the Debtor's use of its cash collateral to pay the Defendant. The Defendant asserts that Regions Bank expressly and impliedly agreed to allow the Debtor to use its cash collateral in its business operations, even if the Debtor was not in full compliance with the Cash Collateral Orders. (Doc. 41, pp. 13–14).

To support its contention, the Defendant relies on the Affidavit of the Debtor's principal, Norman Woerner. In his Affidavit, Woerner stated:

17. While Regions was the secured creditor, it was not uncommon for Wood Treaters to go below the Baseline Balance on any given day.

18. Regions had access to Wood Treaters' bank statements and could verify whether the Combined Balance was above or below the Baseline Balance at the close of business on any given day.

19. All of the Transfers of cash collateral, while Regions was the secured creditor, were consented to by Regions.

20. However, Robert Smith, on behalf of Regions, had an agreement with Wood Treaters that as long as the Combined Balance was at or above the Baseline Balance at the end of each month, then Regions consented to Wood Treaters' use of the Cash Collateral. This is true even though the provisions of the orders may have stated something different.

21. In fact, I relied on this agreement with Regions and used the Baseline Balance as a guideline for making Wood Treaters' voluntary cleanup ongoing efforts with the oversight of the (FDEP) Florida Department of Environmental Protection.

(Doc. 41, Exhibit A, ¶¶ 17–21).

In response to Woerner's Affidavit, the Trustee contends that "Regions never consented to the Transfers" at issue in this case. (Doc. 53, p. 10). To rebut Woerner's Affidavit, the Trustee filed the Affidavit of a vice president of Regions Bank, Robert L. Smith. In his Affidavit, Smith stated:

7. I have read the affidavit of Norman Woerner submitted in the above-styled proceeding and dispute certain material assertions set forth in that affidavit. Specifically, and not by way of limitation, Regions Bank never waived the requirement that the debtor had to maintain the Baseline Balance set forth in the cash collateral orders, and Regions Bank had no ability to assess on a daily basis the debtor's compliance with the Baseline Balance, as Regions Bank received inventory and accounts receivable reports from the debtor only twice a month.

(Doc. 53, Exhibit F, ¶ 7).

Based on the Affidavits of Woerner and Smith, together with the record in this case, the Court finds that issues of fact exist regarding whether Regions Bank consented to the Debtor's use of its cash collateral to make the challenged payments to the Defendant.

The Court also finds that issues of fact exist regarding whether Angelina consented to the Debtor's use of its cash collateral to pay the Defendant. The Defendant asserts that "Angelina's conduct demonstrates that it consented to the Transfers" between April 15, 2010, and June 14, 2010. (Doc. 41, p. 14). In his Affidavit, Woerner stated on behalf of the Debtor:

24. After Regions transferred its interest to Angelina, I worked with Ben Glisan and Michael Heidelberg, representatives of Angelina.

25. I had telephone and email conversations with them approximately two or three times a week, mostly about the Wood Treaters' Combined Balance.

26. I sent updated financial reports regarding the Baseline and Combined Balances to Angelina at least once a week.

27. Based on these reports, Angelina had the ability to determine whether Wood Treaters was in compliance with the Cash Collateral Orders.

28. Wood Treaters received a default letter from Angelina on June 14, 2010. (Doc. 41, Exhibit A, ¶¶ 24–28).

The Trustee contends, on the other hand, that Angelina did not consent to the Debtor's payments to the Defendant. To support her contention, the Trustee filed the Affidavit of a manager of Angelina, Michael Heidelberg. In his Affidavit dated April 26, 2012, Heidelberg stated:

7. All the Transfers were made while the Combined Balance was less than the Baseline Balance. Moreover, the Transfers were made subsequent to an uncured default in contravention of the Final Cash Collateral Order.

8. Angelina did not consent to the Transfers.

(Doc. 58, Affidavit of Michael Heidelberg, ¶¶ 7, 8).

Based on the Affidavits of Woerner and Heidelberg, and the record in this case, the Court finds that issues of fact exist regarding whether Angelina consented to the Debtor's use of its cash collateral to make the payments to the Defendant that are the subject of this proceeding.

## 2. Authorized by the Court

Under § 363(c)(2) of the Bankruptcy Code, a debtor may be authorized to use cash collateral if the secured creditor consents, or if the Court authorizes its use. In this case, the Court authorized the Debtor to use cash collateral in accordance with the terms contained in the Cash Collateral Orders. Among other terms, the Orders required the Debtor to make an "Additional Adequate Protection Payment" to the creditor in the event that the Debtor's accounts and inventory fell below the level that existed on the petition date. If the accounts fell below that level, the Final Consent Order provided that the Debtor "shall not be authorized to use Cash Collateral until Debtor pays Regions the Additional Adequate Protection Payment." (Doc. 56, pp. 4–5).

In her Amended Complaint, the Trustee alleges that the Debtor's accounts and inventory fell below the required level on various days in each month from January through June of 2010. (Doc. 8, ¶ 27). The Trustee further contends in her Motion for Summary Judgment that "[a]ll the Transfers were made while the Combined Balance was less than the Baseline Balance." (Doc. 27, ¶ 36). The Trustee supports this assertion with the Affidavits of Doreen Abbott and Michael Heidelberg. (Doc. 58). According to the Trustee, therefore, the transfers were made when the Debtor was not in compliance with the Cash Collateral Orders, and the Court's authorization to make the transfers had therefore been terminated by the specific terms of the Final Consent Order.

In response, the Defendant asserts that the Trustee "has failed to establish that the transfers occurred when the Combined Balance was below the Baseline Balance." (Doc. 54, p. 10). According to the Defendant, the Trustee's failure is in two parts. First, she failed to prove that the balances were "out of formula" on any particular dates. In other words, the Defendant asserts that the Trustee's allegation regarding daily account balances is simply a conclusory statement that is not supported by any analysis or backup documentation. (Transcript, pp. 40, 47). Second, the Defendant asserts that the Trustee failed to prove the relevant dates on which the transfers occurred. According to the Defendant, the "dates of the transfers as alleged in the Amended Complaint do not match the date that the Debtor's bank honored the payment." (Doc. 54, p. 10).

Based on the record, the Court finds that issues of fact exist in this case regarding whether the transfers to the Defendant were made at a time when the Debtor was

not in compliance with the Cash Collateral Orders. Consequently, the Court cannot determine whether the payments were authorized by the Court in accordance with the Final Consent Order and the provisions of § 363 of the Bankruptcy Code.

### Conclusion

The Motions for Summary Judgment filed by the Trustee and the Defendant should be denied. First, as a jurisdictional matter, the Trustee must establish that the estate suffered an injury that is redressable by a judgment in her favor. In this case, summary judgment is not appropriate because issues of fact exist regarding whether the estate was diminished as a result of the Debtor's transfers to the Defendant.

Additionally, in order to prevail under § 549, the Trustee must show that the transfers were not authorized either by the Bankruptcy Code or by the Court. In this case, summary judgment is not appropriate because issues of fact exist regarding (1) whether the Debtor's secured creditors had consented to the use of cash collateral within the meaning of § 363(c)(2) of the Bankruptcy Code, and (2) whether the transfers were made at a time when the Debtor was not in compliance with the Cash Collateral Orders.

Accordingly:

**IT IS ORDERED** that the Motion for Summary Judgment filed by the Plaintiff, Doreen Abbott, as Chapter 7 Trustee, and the Motion for Summary Judgment filed by the Defendant, Arch Wood Protection, Inc., are denied.